```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

Ronald Vancour,        :
     Plaintiff         :
                       :     Case No. 03cv2088 (JBA)
v.                     :
                       :
Bozzuto's Inc.,        :
     Defendant.        :
```

**RULE ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION TO STRIKE, DEFENDANT'S OBJECTIONS TO PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT [DOCS. ## 48, 58, 60]**

Plaintiff brings this action alleging defendant's violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, et seq., contending that defendant discriminated against him on the basis of age by terminating him from his position as Vice President of Meat, Deli, Bakery, and Seafood at defendant Bozzuto's, Inc. ("Bozzuto's"). Defendant moves for summary judgment claiming it terminated plaintiff for legitimate nondiscriminatory reasons and that plaintiff has no evidence to the contrary that would require resolution by trial. See [Doc. # 48]. Defendant also moves to strike certain portions of plaintiff's affidavit submitted in opposition to defendant's Motion for Summary Judgment. See [Doc. # 58]. For the reasons that follow, defendant's Motion to Strike is granted in part and denied in part, and defendant's Motion for Summary Judgment is denied.

1

**I.   Motion to Strike**

Defendant seeks to strike certain portions of plaintiff's affidavit [Doc. # 54, Ex. A], which it contends contain inadmissible evidence which may not be considered in ruling on a summary judgment motion.  See Motion to Strike [Doc. # 58].  Fed. R. Civ. P. 56(e) requires that an affidavit submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Evidence that would be inadmissible at trial may not be used to meet plaintiff's burden under Rule 56.  See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp, 769 F.2d 919, 924 (2d Cir. 1985).

The objected-to testimony in paragraphs 3, 7, 16, and 27 of plaintiff's affidavit is based on plaintiff's personal knowledge and is thus non-speculative and admissible.  The testimony in paragraph 4 is not necessarily inadmissible because it may be offered for non-hearsay purposes, but in any event, the Court does not rely on such testimony in this ruling.  The Court construes paragraph 9 as testimony that plaintiff's conversations with Michael Bozzuto and George Motel "sounded" rehearsed, not that they necessarily were rehearsed.  Paragraph 21 does not contain the type of outright testimony contradiction prohibited;

rather plaintiff's statements in paragraph 21 and his deposition are simply glosses on the same position and thus both are admissible.  Plaintiff's testimony in paragraph 22 regarding his belief that Robert Misner was not critical of him is irrelevant and thus inadmissible and is struck; the last sentence of paragraph 22 is admissible non-hearsay because Misner's statement is not offered for the truth of the matter asserted, but to demonstrate the reason plaintiff was given for Misner's departure.  The testimony contained in paragraph 25 is relevant and admissible because the fact that Michael Bozzuto may be using company money to fund the operation of his boat goes to his credibility, see infra note 4; Fed. R. Evid. 608(b).  Lastly, paragraph 26 contains admissible testimony explaining plaintiff's deposition testimony; any contradictory deposition testimony can properly be used by defendant in cross-examination.

## II.  Factual Background[1]

Bozzuto's is a wholesale distributor of food and household

---

[1] Defendant objects to plaintiff's Local Rule 56(a)2 Statement contending that it is noncompliant in that it does not cite to admissible evidence.  See [Doc. # 60].  Local Rule 56(a)2 requires that "each denial in an opponent's Local Rule 56(a)2 Statement must be followed by a special citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)2.  Notwithstanding plaintiff's incomplete compliance with this requirement, defendant's objections are overruled as moot, because the Court bases its ruling on the evidence in the record, and not on plaintiff's unsupported denials and characterizations of the facts in its Local Rule Statement.

products that sells products and provides merchandising services to retail food stores and owns and operates several independent retail stores.  Deposition of Michael Bozzuto ("Bozzuto Dep.") [Doc. # 50, Ex. 1] at 8-9.  Michael Bozzuto, son of Bozzuto's founder Adam Bozzuto, began working at the company in the late 1970s, became President in the early 1990s, and Chairman of the Board in 2002.  Id. at 7, 16.  Michael Bozzuto's date of birth is August 12, 1956.  Id. at 6.  Plaintiff Ronald Vancour's date of birth is February 15, 1939, and he was 50 years old when Michael Bozzuto hired him in 1989 to work at Bozzuto's as Director of Meat Operations.  Deposition of Ronald Vancour ("Vancour Dep.") [Doc. # 50, Ex. 3] at 12, 14-15.  Vancour initially supervised 14 employees and reported to the Vice President of Meat, Deli, Seafood and Bakery.  Id. at 14-15.  In 1998, when Vancour was 58, he was given the title of Vice President of Meat, Deli, Seafood and Bakery at Bozzuto's, although his job duties and salary did not change, and no one replaced Vancour in the position of Director of Meat Operations.  Id. at 17; Affidavit of Ronald Vancour ("Vancour Aff.") [Doc. # 53, Ex. A] at ¶ 3; Deposition of George Motel ("Motel Dep.") [Doc. # 50, Ex. 4] at 35.  A year or two later, Executive Vice President George Motel became Vancour's supervisor.  Vancour Dep. at 103; Motel Dep. at 65.

By 2001, Vancour's department had grown to approximately 26 employees, sales had tripled, and Vancour and Motel began

discussing filling the Director of Meat Operations position to give Vancour a second-in-command. Vancour Dep. at 89-90; Motel Dep. at 64-65. Around this same time, Motel asked Vancour how long he intended to work at Bozzuto's, and Vancour expressed his desire to stay until he was 67. Vancour Dep. at 70; Vancour Aff. at ¶ 28; Motel Dep. at 64. Motel contacted a recruiter for candidates to fill the Director of Meat Operations position and Vancour was involved in the selection and interview process. Defendant eventually offered the job to David Kent, who was then the meat director for a larger company in Michigan. Affidavit of Ron Gavitt ("Gavitt Aff.") [Doc. # 50, Ex. 2] at ¶¶ 8-12; Vancour Dep. at 89-91. Kent rejected Bozutto's initial salary offer of $115,000, but accepted the job when the salary was increased to $160,000 to compensate him for the increased cost of living in Connecticut and the relocation disruption to his family. Gavitt Aff. at ¶¶ 11-13; deposition of David Kent ("Kent Dep.") [Doc. # 50, Ex. 8] at 32. As a result, Vancour's salary was apparently lower than Kent's (although the summary judgment record does not indicate the exact amount of Vancour's salary) and Vancour was aware of the differential. When Kent "first came on board" in January 2003, Vancour divided up his responsibilities, giving Kent responsibility for supervising the buyers and salespeople, while Vancour retained all his other responsibilities, including new business, customer relations, administration, and budgeting.

See Vancour Dep. at 92-93.

Then, in April 2003, Motel and Bozzuto's Director of Human Resources, Doug Vaughan, told Vancour he was being terminated because of "issues with customers, vendors, and [Bozutto's] personnel." Id. at 67-68. Vancour also met with Michael Bozutto, who gave him the same reasons for his termination. Id. at 69. Vancour asked to have his departure from Bozutto's announced as a retirement, and Michael Bozzuto consented. Id. The reasons defendant now claims for Vancour's termination, which Vancour disputes, are: (1) the deterioration of Vancour's relationship with Michael Bozzuto in the years preceding Vancour's termination; (2) plaintiff's personality; (3) Vancour's poor attendance at monthly meetings held by his supervisor, Motel; (4) Vancour's lack of cooperation with the support for development of the Adams stores and the Opportunity Buys program developed in connection with those stores, which were operated by another company owned by Michael Bozzuto; (5) complaints received by Michael Bozzuto and Motel from customers and employees about Vancour; (6) excessive inventory problems in Vancour's department; (7) the poor financial performance of Vancour's department.

In Vancour's last written performance evaluation, dated May 9, 2002, Motel gave Vancour a "highly satisfactory" overall performance evaluation, but also commented, inter alia, that

Vancour "need[ed] work" on inventory issues, that Vancour's "mgmt. approach to [his] job [need]ed much improvement," and that Vancour needed to improve his "retailer interaction."  See Vancour Performance Review [Doc. # 50, Ex. 12] at 3-4.  In late-2002 or early-2003, Michael Bozutto said to plaintiff: "You must be getting old.  You used to be more demanding."  Vancour Aff. at ¶ 28.  Approximately a year after Vancour's termination, the leadership of Vancour's former department changed, and Kent was promoted to the position of Vice President of Meat and Seafood and Robert Cohen was hired to be Vice President of Deli and Bakery.  See Press Release [Doc. # 50, Ex. 17].

### III. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw

all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."  Id. (citations omitted).  "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation and citation omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's

part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient.  Matsushita, 475 U.S. at 586 (citations omitted).

**IV. Discussion**

    **A.   Title VII Framework**

As the parties agree, this age discrimination case should be

analyzed under the McDonnell Douglas/Burdine three-prong burden-shifting framework. See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII"); Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003) (McDonnell Douglas analysis applicable to plaintiff's state-law CFEPA claims); accord Dep't of Transp. v. Comm'n on Human Rights and Opportunities, 272 Conn. 457, 463 & n.9 (Conn. 2005). Under that framework, plaintiff first must establish a prima facie case of age discrimination. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To do so, he must prove: (1) membership in a protected class; (2) qualification for his position;[2] (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

If plaintiff establishes his prima facie case, the burden

---

[2] While plaintiff and many courts refer to this second prong in termination cases as requiring plaintiff to demonstrate that he was "performing his duties satisfactorily," the Second Circuit has stated that "a mere variation in terminology between 'qualified for the position' and 'performing . . . satisfactorily' would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." See Slattery v. Swiss Reins. America Corp., 248 F.3d 87, 91-92 (2d Cir. 2001).

shifts to defendant "to produce evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason.  This burden is one of production, not persuasion; it can involve no credibility assessment."  Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000) (internal citations, quotations omitted).  It is satisfied if the proffered evidence "'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'"  Schnabel, 232 F.3d at 88 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  "Although the burden of production shifts to the defendant, the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff."  Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

If defendant articulates an age-neutral basis for its termination of plaintiff, "'the McDonnell Douglas framework – with its presumptions and burdens' – disappear[s] . . . and the sole remaining issue [is] discrimination vel non."  Reeves, 530 U.S. at 142-43 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)).  The burden thus shifts back to plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  Weinstock, 224 F.3d at 42.  That is, the plaintiff "may attempt to establish that he was the victim of intentional discrimination by showing that the employer's

11

proffered explanation is unworthy of credence." <u>Reeves</u>, 530 U.S. at 143.  The Second Circuit has noted that upon a motion for summary judgment in a discrimination case, courts must "examin[e] the entire record to determine whether plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." <u>Schnabel</u>, 232 F.3d at 90.  Thus, a plaintiff's prima facie case combined with sufficient evidence that the defendant's proffered justification is pretextual may be sufficient to survive summary judgment, but the Second Circuit has "decline[d] to hold that no ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext."  <u>Id</u>. (citing <u>Reeves</u>, <u>supra</u>).

Here, it is not disputed that plaintiff has established his prima facie case, nor is it disputed that defendant has proffered age-neutral justifications for plaintiff's termination.  Thus, the summary judgment analysis is centered on evidence related to the third step of the analysis, <u>i.e.</u>, pretext.

**B. Analysis**

Defendant proffers the following nondiscriminatory reasons for plaintiff's termination: (1) the deterioration of plaintiff's relationship with Michael Bozzuto in the couple of years preceding plaintiff's termination; (2) plaintiff's personality; (3) plaintiff's poor attendance at monthly meetings held by his

12

supervisor, Motel; (4) plaintiff's lack of cooperation with the support for development of the Adams stores and the Opportunity Buys program developed in connection with those stores, which were operated by another company owned by Michael Bozzuto; (5) complaints from customers and employees; (6) excessive inventory problems; and (7) poor financial performance of plaintiff's department.  Drawing all inferences from the summary judgment record in plaintiff's favor, the Court finds that there is sufficient evidence from which a jury could conclude that these reasons are a pretext for discrimination.

First, defendant now articulates different reasons than it articulated upon plaintiff's termination and in administrative proceedings before the Connecticut Commission on Human Rights and Opportunities ("CHRO").  Upon termination, plaintiff was told he was being terminated for "issues with customers, vendors, and [Bozzuto's] personnel."  Vancour Dep. at 67-69.  In a letter to the CHRO Regional Manager in September, 2003, in addition to mentioning attendance issues at monthly meetings and inventory issues, defendant pointed to: (1) employee complaints about late reviews and non-retroactive raises, poor communications, and lack of direction; (2) retailer complaints about "inflexibility and curtness;" (3) vendor objections to deviations from customary business practices; and (4) plaintiff "changing programs without consulting his superiors."  See 9/23/03 Letter [Doc. # 53, Ex.

M].³  Inconsistencies between justifications offered for a plaintiff's termination in different proceedings or at different times "raise[] a genuine issue of material fact with regard to the veracity of th[e] [claimed] non-discriminatory reason[s]." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000); EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) (a reasonable jury could infer from discrepancies in employer's version of events and deliberations leading to termination of employee "that the explanations given by [the employer] . . . were pretextual [and] developed over time to counter the evidence suggesting age discrimination").

Additionally, plaintiff has identified evidence raising genuine issues of material fact as to whether defendant's proffered reasons of infrequent meeting attendance, inventory problems, poor financial performance, and lack of cooperation with the Adams' stores are a pretext for age discrimination. Specifically, while Motel testified that plaintiff frequently missed the monthly margin meetings, or came late, see Motel Dep. at 33, plaintiff states that he doesn't recall being late to a single meeting and explains that he was occasionally late to

---

³ Similarly, while defendant stated in discovery that one of the reasons for plaintiff's termination was complaints from customers and employees, see Def's Interrogatory Responses [Doc. # 53, Ex. K] at 2-3, as described infra, when asked about these complaints at his deposition, Michael Bozutto was unable to identify many of the complainants or the substance of their complaints, see Bozzuto Dep. at 131-38.

weekly Wednesday meetings because he had Wednesday meetings with an important customer, and that Motel knew of this conflict and never expressed any concern, Vancour Aff. ¶¶ 19-20; Vancour Dep. at 126.  While defendant references inventory control problems and poor financial performance, plaintiff explains that the reason for the inventory problems was that the Adams chain had shut down several stores, increasing the inventory at Bozzuto's across departments, see Vancour Aff. ¶¶ 15-16, and indicates that at the time his department suffered financially, other departments were having similar results, id. ¶ 16; Margin Analysis [Doc. # 53, Ex. L].  Likewise, while plaintiff acknowledges that he had "an issue involving the Adams stores" concerning the manner in which the stores were displaying Opportunity Buys goods that was not resolved and that as a result the Opportunity Buys program at the Adams stores was downsized, see Vancour Dep. at 25-25, plaintiff explains that the Opportunity Buys programs failed because the Adams stores management "did not adequately buy or display the Opportunity Buys goods," see Vancour Aff. at ¶¶ 17-18.

    A genuine issue of material fact regarding pretext is also demonstrated by the fact that none of the purported complaints of employees and customers about Vancour are documented, defendant has provided changing lists of the sources of these complaints, and Michael Bozzuto could not remember with any specificity

either the identities of the complainants or the substance of the complaints.  See Def's Interrogatory Responses at 2-3; Bozzuto Dep. at 60-67, 131-38; Motel Dep. at 93-108.[4]  Additionally, while defendant cites the deteriorating relationship between plaintiff and Bozzuto as a reason for plaintiff's termination, there is no documentation of this problem either, plaintiff denies that he ever "snapped" at Bozzuto and explains that aggressive "give-and-take" was the nature of Bozzuto's meetings, and Bozzuto could not remember the details of any confrontations with plaintiff at his deposition.  Vancour Aff. ¶ 21; Bozzuto Dep. at 67-69.  Further, some of these problems were referenced in plaintiff's May 2002 performance review, yet plaintiff was nonetheless given a "highly satisfactory" overall performance rating, see Performance Review at 4, suggesting that they were insufficient to justify a low performance rating, let alone termination.[5]

---

[4] Plaintiff seeks to impeach Michael Bozzuto's credibility by referring to testimony indicating that Bozzuto's may maintain a boat for Michael Bozzuto in Florida, and by citing to a National Labor Relations Board decision from 1985 in which Michael Bozzuto's credibility was questioned.  See Pl. Opp. at 4-6; NLRB Decision [Doc. # 53, Ex. I] at 5-6.  While a 20-year old administrative decision is not relevant to credibility assessments in this case, see Fisher v. Krejewski, 873 F.2d 1057, 1064 (7th Cir. 1990), if Michael Bozzuto is in fact disguising personal expenses as business expenditures, that may well impeach his credibility.  See Fed. R. Evid. 608(b).

[5] Cf. Carlton, 202 F.3d at 137 (absence of "negative written performance evaluation or formal warning" and fact that employer continued to employ plaintiff, although employer

The existence of pretext and discrimination could also be inferred from comments made by Bozzuto and Motel, where Bozzuto criticized plaintiff, stating "[y]ou must be getting old.  You used to be more demanding," and Motel asked plaintiff when he was going to retire.  See Vancour Aff. ¶ 28.  This is particularly the case given the correlation of these comments with the claimed "succession planning" and the timing of plaintiff's termination three months after defendant hired Kent (who was substantially younger than plaintiff), where Kent resumed all of plaintiff's duties after his termination.  See Carlton, 202 F.3d at 136 ("Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may bear a more ominous significance when considered within the

---

"insist[ed] that [it] was unhappy with [plaintiff's] performance for years," indicated "that as a reason for his firing, poor job performance was an afterthought").
    The "same actor" inference against discrimination urged by defendant, on the basis that Michael Bozzuto both recruited and hired plaintiff when he was 50 years old and promoted him to vice-president was 58 years old, does not mandate summary judgment in this case because many years elapsed between the positive employment decisions and plaintiff's termination.  See Carlton, 202 F.3d at 138 ("[T]he [same actor] inference is less compelling when a significant period of time elapses between the hiring and firing."); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir.  1997) (presumption particularly applicable "when the firing has occurred only a short time after the hiring"); Douglas v. M. Swift & Sons, Inc., 371 F. Supp. 2d 137, 144 (D. Conn. 2005) (distinguishing Grady where plaintiff had been employed for a year prior to termination, noting "Grady . . . does not stand for the bare proposition that a plaintiff may never prove discrimination when the same individual has made the hiring and firing decisions").

totality of all the evidence.") (internal quotation omitted).[6]

## V.  Conclusion

For the foregoing reasons, defendant's Motion to Strike [Doc. # 58] is GRANTED in part and DENIED in part, defendant's Objections [Doc. # 60] are OVERRULED, and defendant's Motion for Summary Judgment [Doc. # 48] is DENIED.

                                    IT IS SO ORDERED.

                                    _____/s/_____
                                    Janet Bond Arterton
                                    United States District Judge

**Dated at New Haven, Connecticut this 23rd day of March, 2006.**

---

[6] Defendant argues that the fact that defendant has both hired and retained many older employees demonstrates that there was no age discrimination in this instance. See Def. Mem. at 21 & n.16.  However, because the purpose of federal statutes such as the ADEA is "protecting individuals, rather than a protected class as a whole," "an employer may not escape liability for discriminating against a given employee . . . simply because it can prove it treated other members of the employee's group favorably." Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000).